**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

**KANIJA SCOTT,**

**Plaintiff,**

v. **CASE NO:** 1:26-cv-10342

**TRANS UNION, LLC,**

**Defendant.**

**PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW the Plaintiff, KANIJA SCOTT ("Plaintiff"), by and through the undersigned counsel, amends her Complaint against Defendant TRANS UNION, LLC ("Trans Union"), to correct typographical errors respectfully as follows:

## I. INTRODUCTION

1. This is an action for damages brought by Plaintiff against Trans Union for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA").

2. Section 1681g(a)(1) of the FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose" to that consumer "All information in the consumer's file at the time of the request." Section 1681e(b) separately requires a

consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information it reports concerning the consumer.

3. On August 19, 2026, Trans Union furnished Plaintiff a consumer disclosure that satisfied neither obligation. Trans Union withheld the Date of First Delinquency for every adverse account in Plaintiff's file while simultaneously publishing the removal date that is calculated from it; withheld the current balance and amount past due for those same accounts; withheld the amount paid while reporting the dates on which Plaintiff's payments were made; and reported years of delinquency ratings for months in which it disclosed no underlying account data whatsoever.

4. Trans Union is liable to Plaintiff for its willful violations pursuant to 15 U.S.C. § 1681n and, in the alternative, for its negligent violations pursuant to 15 U.S.C. § 1681o.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Trans Union transacts business throughout the United States and within this District, and is subject to the personal jurisdiction of this Court.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Trans Union resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims — Trans Union's assembly of Plaintiff's file and its preparation of the deficient consumer disclosure at issue — occurred in this District.

8. Assignment to the Eastern Division is proper because Trans Union maintains its principal place of business in Cook County, Illinois.

## III. PARTIES

9. Plaintiff Kanija Scott is a natural person residing in Florida City, Miami-Dade County, Florida.

10. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Defendant Trans Union, LLC is a limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Trans Union may be served through its registered agent Corporation Service Company.

12. Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). For monetary fees, dues, or on a cooperative nonprofit basis, Trans Union regularly engages in the practice of assembling and evaluating consumer credit information and other information concerning consumers for the purpose of furnishing consumer reports to third parties, and it uses the mails and other facilities of interstate commerce to prepare and furnish those reports.

13. Trans Union is a nationwide consumer reporting agency within the meaning of 15 U.S.C. § 1681a(p) and is fully aware of, and subject to, its obligations under the FCRA.

## IV. FACTUAL ALLEGATIONS

***Plaintiff's August 19, 2026 Consumer Disclosure***

14. On or about August 19, 2026, Plaintiff requested a copy of her consumer file disclosure from Trans Union.

15. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request Trans Union was required to clearly and accurately disclose to Plaintiff all information in her file at the time of the request, subject only to the limited exception that her Social Security number could be truncated.

16. Trans Union furnished Plaintiff an electronic consumer disclosure bearing File Number 431858344 and a "Date Created" of August 19, 2026 (the "Trans Union Disclosure"). A true and correct copy is attached as **PLAINTIFF'S EXHIBIT A**.

17. The Trans Union Disclosure states that Plaintiff has been on Trans Union's files since April 7, 2009. It runs 152 pages and reports seventy-one (71) tradelines, five (5) of which Trans Union grouped under the heading "Accounts with Adverse Information."

18. The five adverse accounts are: (a) BLINCLOANS, INC, displayed as "2613**"; (b) BMG MONEY, displayed as "33050"; (c) CCB/TLS/LENDLY, displayed as "3978"; (d) KASHABLE LLC, displayed as "1707**"; and (e) US TREASURY-FNCL MGMT, displayed as "2204****".

19. Trans Union's Disclosure was not complete, was not clear, and was not accurate, as set forth below.

***Trans Union Omitted the Date of First Delinquency***

20. The Date of First Delinquency ("DOFD") is the date on which an account first became delinquent and was not thereafter brought current. It is the operative date under 15 U.S.C.

§ 1681c, which bars a consumer reporting agency from including in a consumer report any account placed for collection or charged to profit and loss that antedates the report by more than seven years, and which measures that period from the commencement of the delinquency that preceded the collection or charge-off. See 15 U.S.C. § 1681c(a)(4), (c)(1).

21. Pursuant to 15 U.S.C. § 1681s-2(a)(5)(A), a furnisher that reports an account placed for collection, charged to profit and loss, or subjected to any similar action is required to notify the consumer reporting agency of the month and year of the commencement of the delinquency that immediately preceded that action, and to do so not later than 90 days after furnishing the information.

22. The Credit Reporting Resource Guide published by the Consumer Data Industry Association ("CDIA"), the trade association whose members include Trans Union, designates the DOFD as Base Segment Field 25, "FCRA Compliance/Date of First Delinquency," and states: "This date is used to ensure compliance with the Fair Credit Reporting Act." The Guide further states that "The Date of First Delinquency is used by the consumer reporting agencies for purging purposes." **SEE PLAINTIFF'S EXHIBIT B**.

23. On information and belief, the furnishers of the five adverse accounts complied with 15 U.S.C. § 1681s-2(a)(5)(A) and with the Credit Reporting Resource Guide and reported the DOFD for each account to Trans Union, and each such DOFD was maintained within Trans Union's file regarding Plaintiff at the time of her request.

24. Trans Union nevertheless omitted the DOFD from every one of the five adverse accounts. The phrase "Date of First Delinquency" does not appear anywhere in the 152-page Trans Union Disclosure, and no field bearing that date is disclosed for any account.

25. Trans Union did not, however, omit the number it derives from the DOFD. For each of the same five adverse accounts, and for no other account in the file, Trans Union disclosed a field captioned "Estimated month and year this item will be removed":

a. BLINCLOANS, INC (2613**) — 03/2031;

b. BMG MONEY (33050****) — 05/2031;

c. CCB/TLS/LENDLY (3978****) — 03/2031;

d. KASHABLE LLC (1707**) — 08/2029; and

e. US TREASURY-FNCL MGMT (2204****) — 01/2033.

26. The estimated removal date is an arithmetic function of the DOFD. Under 15 U.S.C. § 1681c, the date on which an adverse item must be purged is the DOFD plus seven years, plus — for accounts placed for collection or charged to profit and loss — a period of up to 180 days. Trans Union could not have calculated and published a removal date for any of these five accounts without possessing that account's DOFD.

27. By disclosing the output of the calculation while withholding its only input, Trans Union established on the face of its own Disclosure both that the DOFD was in Plaintiff's file at the time of her request and that Trans Union did not disclose it to her.

28. The omission is not academic. Without the DOFD, Plaintiff cannot determine whether any of the five adverse accounts is being reported within the period 15 U.S.C. § 1681c permits,

whether any of them has been re-aged so as to extend its reporting life, or whether Trans Union's own "estimated" removal dates are correct. Trans Union thus shifted the burden of disclosure and inquiry away from itself and onto Plaintiff.

29. That the estimated removal dates cannot simply be trusted in the DOFD's place is apparent from the Disclosure itself. Trans Union reports that the CCB/TLS/LENDLY account will be removed in 03/2031. Working backward through § 1681c, a removal date of March 2031 corresponds to a DOFD no later than March 2024. Yet Trans Union's own payment grid for that account, which begins in January 2024, rates every month from January 2024 through April 2024 "OK — Current, paying or paid as agreed," and reports the account's first 30-day delinquency in May 2024. The removal date Trans Union published is irreconcilable with the payment history Trans Union published four lines above it, and Trans Union withheld the one field that would allow Plaintiff to determine which of the two is wrong.

30. Trans Union routinely includes the DOFD in the consumer reports it prepares and sells to third-party users, which demonstrates both that the field is maintained in Plaintiff's file and that Trans Union is fully capable of disclosing it in compliance with 15 U.S.C. § 1681g(a)(1).

***Trans Union Omitted the Current Balance and the Amount Past Due***

31. The Credit Reporting Resource Guide designates the current balance as Base Segment Field 21 and instructs furnishers to "Report the outstanding current balance on the account as of the Date of Account Information." It designates the amount past due as Base Segment

Field 22 and instructs furnishers to "Report the total amount of payments that are 30 days or more past due in whole dollars only." **SEE PLAINTIFF'S EXHIBIT B**.

32. On information and belief, the furnishers of the five adverse accounts reported the current balance and the amount past due for each account to Trans Union, and that information was maintained within Trans Union's file regarding Plaintiff at the time of her request.

33. For each of the five adverse accounts, the "Account Information" block of the Trans Union Disclosure — the block in which Trans Union sets out Date Opened, Responsibility, Account Type, Loan Type, Date Updated, Payment Received, Last Payment Made, Pay Status, Terms, High Balance, and the estimated removal date — contains no current balance field and no amount past due field at all.

34. Trans Union's omission is selective, and the Disclosure proves it. For the same five accounts Trans Union disclosed a "High Balance" or "High Balance (Hist.)" figure; for the revolving accounts elsewhere in Plaintiff's file — including APPLE CARD – GS BANK USA and two CAPITAL ONE accounts — Trans Union disclosed a "Credit Limit (Hist.)" figure. Trans Union therefore populated adjacent dollar-value fields from the same tradeline records while leaving the current balance and amount past due blank.

35. The consequence is that a consumer reading the Trans Union Disclosure cannot learn from the account block what she owes. As to the BLINCLOANS account, Trans Union reports a Pay Status of "Account 120 Days Past Due Date" and Terms of "$212 per month, paid Bi-weekly for 34 months," but discloses no balance and no past-due amount. As to the KASHABLE account, Trans Union reports a Pay Status of "Account 120 Days Past Due

Date" and Terms of "$299 per month, paid Bi-weekly for 18 months," and again discloses no balance and no past-due amount.

36. The BMG MONEY account illustrates the point most starkly. Trans Union reports that account with a Pay Status of "Charge-off," a Date Closed of 11/30/2024, and a Remarks entry reading "PAID IN FULL/WAS A CHARGE OFF." Trans Union discloses no balance for that account. A consumer reading the Disclosure cannot determine from it whether Trans Union's file reflects that the account carries a balance of zero, that it carries the reported High Balance of $8,832, or that it carries some other figure.

37. The current balance reflects the consumer's actual financial obligation. Without it, Plaintiff could not determine whether any balance remained owed on the adverse accounts, whether the amounts Trans Union maintains match Plaintiff's own records, or whether the accounts had been satisfied.

38. Trans Union routinely includes current balance and amount past due information in the consumer reports it prepares and sells to third-party users, which demonstrates both that those fields are maintained in Plaintiff's file and that Trans Union is capable of disclosing them in compliance with 15 U.S.C. § 1681g(a)(1).

***Trans Union Omitted the Amount Paid***

39. The Credit Reporting Resource Guide designates the actual payment amount as Base Segment Field 16 and instructs furnishers to "Report the dollar amount of the monthly payment actually received for this reporting period in whole dollars only." **SEE PLAINTIFF'S EXHIBIT B**.

40. For four of the five adverse accounts, Trans Union reports a "Payment Received" value of "$0" while, in the very next line of the same account block, reporting a "Last Payment Made" date on which a payment was in fact received: BLINCLOANS (Payment Received $0; Last Payment Made 09/23/2024); BMG MONEY (Payment Received $0; Last Payment Made 05/22/2024); CCB/TLS/LENDLY (Payment Received $0; Last Payment Made 05/04/2024); and KASHABLE (Payment Received $0; Last Payment Made 02/17/2023).

41. Trans Union thus reports the existence of Plaintiff's payments in one field and zeroes them out in another, without disclosing the amount actually received in any field.

42. The defect compounds the omission described above. For the months in which Trans Union reports that Plaintiff made her last payment on each of those accounts, Trans Union's payment history grid reports the Amount Paid as "- - -" — no value at all. Plaintiff is therefore told that she made a payment, told that the amount received was zero, and shown a payment history that reports no amount for the month in question.

43. On information and belief, the furnishers reported the actual payment amounts to Trans Union, and those amounts were maintained within Trans Union's file regarding Plaintiff at the time of her request.

44. Without the amount paid, Plaintiff cannot reconcile the accounts against her own payment records, cannot determine whether her payments were credited, and cannot evaluate whether the delinquency ratings Trans Union assigned are consistent with the payments Trans Union acknowledges receiving.

***Trans Union Omitted Years of Account Data While Publishing Delinquency Ratings for the Very Months It Reports No Data***

45. For each tradeline, the Trans Union Disclosure sets out a month-by-month payment history grid reporting five values per month: Balance, Past Due, Amount Paid, Scheduled Payment, and Rating.

46. For the BLINCLOANS account, Trans Union reports fifty (50) months of payment history running from May 2022 through June 2026. For each of the thirty-seven (37) consecutive months from May 2022 through May 2025, and again for July 2025, Trans Union reports the Balance, Past Due, Amount Paid, and Scheduled Payment as "- - -" — no value at all. Trans Union nevertheless assigns a Rating to every one of those months, including a 30-day delinquency rating in April 2024, a 60-day rating in June 2024, a 90-day rating in July 2024, and a 120-day rating in each of the fourteen consecutive months from August 2024 through September 2025.

47. For the KASHABLE account, Trans Union reports fifty-two (52) months of payment history running from April 2022 through July 2026. For each of the thirty-eight (38) consecutive months from April 2022 through May 2025, and again for July 2025, Trans Union reports the Balance, Past Due, Amount Paid, and Scheduled Payment as "- - -". Trans Union nevertheless assigns a Rating to every one of those months, including 30-day ratings beginning in September 2022 and 120-day ratings in each of the twenty-six consecutive months from April 2023 through May 2025.

48. Trans Union is thus publishing derogatory ratings, for years at a time, for months in which its own Disclosure reports that it possesses no balance, no past-due amount, no payment, and no scheduled payment for the account being rated.

49. Either Trans Union possesses the underlying month-by-month data and withheld it from Plaintiff, in violation of 15 U.S.C. § 1681g(a)(1), or Trans Union does not possess it and is assigning delinquency ratings unsupported by any data in its files, in violation of 15 U.S.C. § 1681e(b). Trans Union's Disclosure gives Plaintiff no way to tell which.

50. The same grids show that Trans Union had the data available for the identical fields in later months. For BLINCLOANS, Trans Union reports a Balance of $3,967 in June 2025 rising month over month to $4,676 in June 2026, an Amount Past Due frozen at $3,504, a Scheduled Payment of $212, and an Amount Paid of $0 in every one of those months. For KASHABLE, Trans Union reports a Balance and an Amount Past Due of $3,302 and a Scheduled Payment of $299 in each month from August 2025 forward. Trans Union populated these fields when it chose to and left them blank when it chose not to.

51. Trans Union also assigned the rating code "X" to the KASHABLE account for April 2022. Trans Union's own Payment/Remarks Key, printed in the Disclosure, defines "X" as "Unknown."

***Trans Union Omitted the Original Creditor and the Full Account Numbers***

52. Trans Union reports the US TREASURY-FNCL MGMT tradeline with a Pay Status of "Collection," an Account Type of "Open Account," a Loan Type of "GOVERNMENT," and a monthly Remarks code of "CLA," which Trans Union's own Payment/Remarks Key defines as "Placed for collection."

53. For that tradeline Trans Union disclosed an "Original Creditor" value of "EAGAN MAS1." That value does not identify any creditor. It is a fragment, and a consumer reading it cannot determine what obligation the collection account represents, who extended the underlying credit, or whether the debt is hers.

54. Trans Union demonstrated in the same Disclosure that it maintains and can print intelligible original-creditor names: for the AFFIRM INC tradelines elsewhere in Plaintiff's file, Trans Union disclosed Original Creditors of "LEAD BANK" and "CELTIC BANK."

55. The Credit Reporting Resource Guide instructs debt collectors to report the name of the company or creditor that originally opened the account for the consumer, and explains that the purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports — because without the original creditor name, consumers may not know what the accounts represent. **SEE PLAINTIFF'S EXHIBIT B**.

56. Trans Union also truncated the account number of every tradeline in the Disclosure, including all five adverse accounts, displaying only a fragment of each number (for example, "2613**" for BLINCLOANS and "1707**" for KASHABLE). On information and belief, the furnishers reported complete account numbers to Trans Union, and those complete numbers were contained in Trans Union's file regarding Plaintiff at the time of her request.

57. The failure to disclose full account numbers violates the FCRA's requirement that a consumer reporting agency clearly and accurately disclose all information contained in a consumer's file. See *Washington v. Equifax Info. Servs., LLC*, No. 3:19-cv-00154 (M.D.

Tenn. June 12, 2019) (holding that truncation of account numbers states a plausible claim under Section 609 of the FCRA).

58. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT C**.

***Trans Union's Disclosure Is Internally Contradictory on Its Face***

59. Separate and apart from what Trans Union withheld, what Trans Union did publish contradicts itself in ways requiring no information from any furnisher to detect.

60. Trans Union reports the BMG MONEY account with Terms of "$0 per month, paid Bi-weekly for 24 months," and the CCB/TLS/LENDLY account with Terms of "$0 per month, paid Bi-weekly for 26 months." No installment loan carries a scheduled payment of zero dollars per month. This defect is not confined to the adverse accounts: Trans Union reports Terms of "$0 per month" on approximately forty-nine (49) separate tradelines across Plaintiff's file.

61. Trans Union reports the US TREASURY-FNCL MGMT account with a "High Balance (Hist.)" of "High balance of $31 from 05/2026 to 08/2026," while the payment history grid for that same account reports a Balance of $40 in May 2026. Trans Union thus reports a balance in a month that exceeds the highest balance it reports for that same month.

62. Trans Union reports the KASHABLE account as rated 90 days past due in December 2022, then 60 days past due in January 2023 and again in February 2023, then 90 days past due in March 2023. A delinquency cannot become less severe without a payment, and Trans Union reports the Amount Paid for each of those months as "- - -".

63. Trans Union reports the BMG MONEY account with a Pay Status of "Charge-off" and a Remarks entry of "PAID IN FULL/WAS A CHARGE OFF," while simultaneously reporting "Payment Received: $0." An account cannot be paid in full and have received no payments.

64. Trans Union reports the CCB/TLS/LENDLY account with a Remarks entry stating "Completed investigation of FCRA dispute-consumer disagreed," establishing that Trans Union's own records reflect a completed FCRA reinvestigation as to that tradeline. **[**

65. Each of these defects is apparent on the face of Trans Union's own Disclosure. Reasonable procedures to assure maximum possible accuracy would have caught them before Trans Union published them.

***Prevalence of Trans Union's Errors***

66. On information and belief, Trans Union generated Plaintiff's Disclosure using an automated template that extracts data from a consumer's file and populates it into pre-programmed fields on a standard consumer disclosure form, and that same template is used virtually every time a consumer requests her file from Trans Union.

67. On information and belief, consumer disclosures produced by Trans Union through that template exhibit the same omissions Plaintiff's Disclosure exhibits — missing Date of First

Delinquency, missing current balance, missing amount past due, missing amount paid, and truncated account numbers.

68. Every consumer who requested a disclosure from Trans Union during the period the template has been in use therefore likely received an incomplete disclosure materially identical to Plaintiff's. Trans Union's error has likely affected many thousands of consumers.

69. Trans Union has been on notice of these defects for years and has taken no corrective action. See, e.g., *Purdy v. Equifax Info. Servs., LLC*, No. 8:19-cv-00217 (M.D. Fla. Jan. 28, 2019).

70. The Seventh Circuit has held that a consumer reporting agency's disclosure obligation under § 1681g is not satisfied merely because the information disclosed is technically accurate; the disclosure must also be clear enough that the consumer can understand it. See *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938 (7th Cir. 2007).

71. The Supreme Court has instructed that any interpretation of the FCRA must be grounded in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). Consistent with that instruction, the Second Circuit has held that § 1681g requires consumer reporting agencies to clearly and accurately disclose all information, not all accurate information. *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016). Trans Union's obligation therefore extends to every item maintained in Plaintiff's file.

72. Trans Union's failure to disclose all of the information in Plaintiff's file is an intentional violation of 15 U.S.C. § 1681g(a), motivated by a desire to avoid costs and increase profits, and warrants an award of punitive damages.

73. Plaintiff has a right to a full and complete disclosure of the contents of her file upon demand, at least once every twelve months and without charge, presented clearly and accurately. 15 U.S.C. §§ 1681g, 1681j. Trans Union's conduct deprived her of that right.

## V. PLAINTIFF'S INJURY AND STANDING

74. Trans Union furnished consumer reports concerning Plaintiff to third parties during the relevant period. Trans Union's own Disclosure identifies those users by name and by date, including: NAVY FEDERAL CREDIT UNION (September 9, 2024 and November 10, 2025); CAPITAL ONE AUTO (September 18, 2024 and August 28, 2025); SOFI BANK, NATIONAL ASSOCIATION (May 22, 2025); WEBBANK/AVANT, LLC (August 13, 2025); SYNCHRONY BANK (September 4, 2025); ZIP CO US INC. (November 14, 2025, April 21, 2026, and June 21, 2026); DISCOVER CARD (July 7, 2026); GOLDMAN SACHS BANK USA (July 14, 2026); CREDIT SESAME, INC. (August 16, 2026); and CAPITAL ONE (August 17, 2026 — two days before the Disclosure at issue was created).

75. On information and belief, each of those reports was assembled from the same file, containing the same tradeline records, from which Trans Union generated Plaintiff's Disclosure, and each carried the same five adverse accounts bearing the same delinquency ratings — including the very fields Trans Union withheld from Plaintiff.

76. Trans Union's omissions and its reporting are therefore two sides of the same conduct. Trans Union withheld from Plaintiff the Date of First Delinquency, the current balance, the

amount past due, and the amount paid, while furnishing to the users named above reports drawn from the same records — records that Trans Union's own Disclosure shows to be internally contradictory as to those very fields. Because the DOFD was withheld, Plaintiff cannot determine whether the adverse information Trans Union disseminated was within the period 15 U.S.C. § 1681c allows or was obsolete.

77. Trans Union's reporting suppressed Plaintiff's credit score. Of the five adverse accounts, two carry 120-day delinquency ratings continuously for more than two years, one is reported as a charge-off, and one is reported as a collection. That information reduced the scores delivered to every user that obtained Plaintiff's file.

78. As a direct and proximate result of Trans Union's conduct, Plaintiff has suffered actual damages, including denial of credit and denial of favorable credit opportunities, receipt of less favorable credit terms and interest rates than she would otherwise have obtained, damage to her creditworthiness and reputation, out-of-pocket costs and lost time attempting to obtain and reconcile her file, and emotional distress, anxiety, embarrassment, and frustration.

79. The omissions compounded that harm. Deprived of the DOFD, the current balance, the amount past due, and the amount paid, Plaintiff had no means of identifying or disputing the adverse information before Trans Union furnished it again. Each report Trans Union issued to the next user carried the same defects, and Plaintiff had no way to interrupt that sequence.

80. Plaintiff also suffered a concrete informational injury. Trans Union deprived her of information to which she is statutorily entitled, prevented her from determining the true

status of her accounts, and forced her to speculate about the completeness and accuracy of what Trans Union maintains about her and furnishes to others. See *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

81. Plaintiff has retained the undersigned counsel to represent her in this matter and has agreed to pay reasonable attorney's fees and costs.

## VI. VIOLATIONS OF 15 U.S.C. § 1681g

### COUNT I

### WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g

82. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

83. Trans Union willfully violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose all information in her file at the time of the request. Specifically, Trans Union disclosed the five adverse accounts without disclosing the Date of First Delinquency, the current balance, the amount past due, the amount paid, the complete account numbers, or an intelligible original creditor, and without disclosing the month-by-month account data underlying years of delinquency ratings it published — all of which was reported by the data furnishers to Trans Union and maintained in Trans Union's files.

84. Trans Union's violations were willful. Trans Union knew or should have known that the withheld information was maintained within its file and was required to be disclosed under 15 U.S.C. § 1681g(a)(1). Its conduct was, at a minimum, in reckless disregard of its

statutory obligations under the standard set out in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), as demonstrated by: (a) its disclosure of removal dates it could only have calculated from the DOFD it withheld; (b) its disclosure of adjacent dollar-value fields on the same tradelines whose balances it left blank; (c) its disclosure of intelligible original creditors on other tradelines in the same file; (d) its routine inclusion of each withheld field in the consumer reports it prepares and sells to third parties; and (e) its longstanding awareness of these systemic disclosure failures, which consumers have identified and disputed for years.

85. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681n for the greater of her actual damages and statutory damages of not less than $100 and not more than $1,000 per violation, plus punitive damages, attorney's fees, and costs.

**COUNT II**

**NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g**

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

87. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose all information in her file at the time of the request, in the respects set forth above.

88. Trans Union had a legal duty to provide Plaintiff with a clear and accurate disclosure of all information within its file concerning her at the time of her request, and it breached that duty.

89. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681o for her actual damages, plus attorney's fees and costs.

## VII. VIOLATIONS OF 15 U.S.C. § 1681e(b)

## COUNT III

## WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

90. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

91. Section 1681e(b) of the FCRA requires a consumer reporting agency, whenever it prepares a consumer report, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

92. Trans Union willfully violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure and of the consumer reports it furnished concerning her. Specifically, Trans Union published: a removal date for the CCB/TLS/LENDLY account that its own payment grid for that account contradicts; a reported balance on the US TREASURY-FNCL MGMT account exceeding the high balance it reports for the same month; scheduled monthly payment terms of "$0 per month" on approximately forty-nine tradelines; a "Paid in Full" remark alongside "Payment Received: $0" on the BMG MONEY account; a sequence of decreasing delinquency ratings on the KASHABLE account in months for which it reports no payment received; and delinquency ratings, for

years at a time, in months for which it reports no balance, no amount past due, no amount paid, and no scheduled payment.

93. Each of these inaccuracies is apparent on the face of Trans Union's own disclosure and required no information from any furnisher to detect. Trans Union's publication of them reflects procedures that prioritize automated throughput over accuracy, in reckless disregard of its obligations under § 1681e(b).

94. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681n for the greater of her actual damages and statutory damages of not less than $100 and not more than $1,000 per violation, plus punitive damages, attorney's fees, and costs.

**COUNT IV**

**NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)**

95. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

96. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer disclosure and of the consumer reports it furnished concerning her, in the respects set forth above.

97. Trans Union had a legal duty to follow reasonable procedures to assure maximum possible accuracy, and it breached that duty.

98. Trans Union is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681o for her actual damages, plus attorney's fees and costs.

## VIII. RIGHT TO AMEND

These allegations are made with the acknowledgment that this matter remains under investigation and that discovery has not yet been conducted. As further investigation and discovery proceed, additional facts will be uncovered that may necessitate further, additional, or different allegations, including additional counts under 15 U.S.C. § 1681i.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kanija Scott respectfully requests that this Court enter judgment in her favor and against Defendant Trans Union, LLC, awarding the following relief:

a. Statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), or, if greater, Plaintiff's actual damages;

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

e. Such other and further relief as this Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: **08/31/2026**

Respectfully submitted,

/s/ Esther Oise
Esther Oise, Esq.
Georgia Bar No. 686342
Oise Law Group, P.C.
2635 Governors Walk Blvd
Snellville, GA 30039
770-895-3736 | oiselaw@gmail.com
Attorney for Plaintiff

**EXHIBIT LIST**

**Exhibit A** — Plaintiff's Trans Union Consumer Disclosure, File Number 431858344, dated August 19, 2026.

**Exhibit B** — Excerpts from the CDIA Credit Reporting Resource Guide (2024): Base Segment Field 16 (Actual Payment Amount), Field 21 (Current Balance), Field 22 (Amount Past Due), Field 25 (FCRA Compliance/Date of First Delinquency), and the K1 Segment original-creditor reporting instruction.

**Exhibit C** — FTC Advisory Opinion to Darcy, June 30, 2000.